IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | CIVIL ACTION 06-4594 |
| | : | BANK. NO. 05-10104 |
| TONY E. BUTTS AND | : | |
| STACEY BUTTS | : | |

# MEMORANDUM

PRATTER, DISTRICT JUDGE                                                                                  JUNE 13, 2007

The issues presented for resolution here underscore the proposition that the size of the award of attorney's fees does not necessarily matter in order for there to be a full-blown dispute about them. Indeed, here an $1,120 fee award has prompted a good faith challenge which the parties have briefed and orally argued and which the Court has considered as if many multiples of the principal were hanging in the balance of the principles at issue. Specifically, Northeastern Title Loans LLC ("Northeastern") has appealed the September 12, 2006 Order[1] of the Bankruptcy Court for the Eastern District of Pennsylvania denying its motion to set aside the bankruptcy court's previous order awarding attorney's fees to Debtors Tony and Stacey Butts ("Debtors"). For the reasons set forth below, and because of the restrictive limits on this Court's review of this matter, the Court affirms the September 12, 2006 Order of the bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors are the owners of a Lexus automobile to which Northeastern held a preferred security interest pursuant to a loan agreement between Debtors and Northeastern. At all

---

[1] The bankruptcy court's Order, along with the accompanying Opinion, is dated September 12, 2006, and was entered on the docket on September 13, 2006. The court then issued a revised Opinion on September 18, 2006, which replaced the September 12, 2006 Opinion. However, while the Opinion has been replaced, the September 12, 2006 Order remains in effect.

pertinent times, Debtors dealt with Northeastern's sales office located in New Castle, Delaware.

In 2004, Debtors defaulted on their loan, prompting Northeastern to direct Alliance Recovery Services ("Alliance") to repossess Debtors' car pursuant to the terms of the loan agreement. On December 22, 2004, Alliance repossessed Debtors' car.

On January 3, 2005, Debtors filed for bankruptcy relief under Chapter 13. On that date, Mr. Philip Horvitz, counsel for Debtors, faxed a copy of Debtors' bankruptcy petition to Northeastern's New Castle location. Mr. Horvitz requested copies of the Debtors' loan documents and requested immediate release of Debtors' car. Northeastern received this communication and promptly sent notice to Alliance, authorizing it to release Debtors' car.

By January 12, 2005, Debtors still had not regained possession of their car, and they filed a motion to turn over the vehicle (the "Turnover Motion") with the bankruptcy court. Along with the Turnover Motion, Debtors requested an award of attorneys' fees because of Northeastern and Alliance's failure to turn over Debtors' vehicle.

The bankruptcy court held a hearing on the Turnover Motion on February 22, 2005. No one from either Northeastern or Alliance attended the hearing. On that date, the bankruptcy court entered an order directing Northeastern to turn the vehicle over to the Debtors, and holding Northeastern in contempt of court. The bankruptcy court directed Debtors' counsel to submit an affidavit of attorney's fees to be acted upon by the court without further hearing.

On February 26, 2005, Mr. Horvitz filed an affidavit that identified the services he had provided in connection with the Turnover Motion, and requested an award of fees of $1,120. On March 7, 2005, the bankruptcy court entered an order awarding Mr. Horvitz $1,120, pursuant to

times, Debtors dealt with Northeastern's sales office located in New Castle, Delaware.

In 2004, Debtors defaulted on their loan, prompting Northeastern to direct Alliance Recovery Services ("Alliance") to repossess Debtors' car pursuant to the terms of the loan agreement. On December 22, 2004, Alliance repossessed Debtors' car.

On January 3, 2005, Debtors filed for bankruptcy relief under Chapter 13. On that date, Mr. Philip Horvitz, counsel for Debtors, faxed a copy of Debtors' bankruptcy petition to Northeastern's New Castle location. Mr. Horvitz requested copies of the Debtors' loan documents and requested immediate release of Debtors' car. Northeastern received this communication and promptly sent notice to Alliance, authorizing it to release Debtors' car.

By January 12, 2005, Debtors still had not regained possession of their car, and they filed a motion to turn over the vehicle (the "Turnover Motion") with the bankruptcy court. Along with the Turnover Motion, Debtors requested an award of attorneys' fees because of Northeastern and Alliance's failure to turn over Debtors' vehicle.

The bankruptcy court held a hearing on the Turnover Motion on February 22, 2005. No one from either Northeastern or Alliance attended the hearing. On that date, the bankruptcy court entered an order directing Northeastern to turn the vehicle over to the Debtors, and holding Northeastern in contempt of court. The bankruptcy court directed Debtors' counsel to submit an affidavit of attorney's fees to be acted upon by the court without further hearing.

On February 26, 2005, Mr. Horvitz filed an affidavit that identified the services he had provided in connection with the Turnover Motion, and requested an award of fees of $1,120. On March 7, 2005, the bankruptcy court entered an order awarding Mr. Horvitz $1,120, pursuant to

11 U.S.C. § 105(a),[2] to be paid by Northeastern and Alliance.[3]

This appeal stems from Northeastern's assertion that it was never served with the Turnover Motion, and that it never actually received the Turnover Motion, notice of the hearing on the motion, or notice that Mr. Horvitz had sought attorney's fees.

Apparently, there was no contact between the parties following the bankruptcy court's awarding attorneys' fees in March 2005 until a year later when Mr. Horvitz sent a letter to Northeastern in March 2006 inquiring about the unpaid legal fees. Promptly thereafter, on March 31, 2006, Northeastern filed a motion to set aside judgment for attorney's fees. The bankruptcy court held a hearing on this motion on June 7, 2006, at which the following individuals testified on behalf of Northeastern: John Henry, Northeastern's area manager responsible for four of Northeastern's locations in Delaware, including the New Castle office; Valerie Henry, the manager of Northeastern's New Castle, Delaware location; and Timothy Newell, Northeastern's Vice President for Field Operations. Mr. Horvitz testified for the Debtors.

On September 12, 2006, the bankruptcy court denied Northeastern's motion to set aside

---

[2] This section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

[3] Shortly thereafter, Alliance submitted a motion to reconsider the bankruptcy court's order and, after a hearing on April 19, 2005, and by order dated April 22, 2005, the court vacated the February 22, 2005 and March 7, 2005 orders to eliminate the finding of contempt or awarding of attorneys' fees as to Alliance.

3

judgment. Northeastern now appeals that ruling. Northeastern filed a brief in support of its appeal (Docket No. 3), and Debtors filed a response (Docket No. 4). The Court presided over oral arguments on Northeastern's appeal on May 29, 2007.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

**STANDARD OF REVIEW**

"In bankruptcy cases, the district court sits as an appellate court," In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995), and "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. A trial court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; see In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983) (stating that an appellate court will review the findings of fact of the bankruptcy court only for clear error). A trial court's findings of fact are clearly erroneous when, after reviewing the evidence, the appellate court is "'left with a definite and firm conviction that a mistake has been committed.'" Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). However, the bankruptcy court's conclusions of law are given plenary and de novo review. In re Meade Land & Development Co., Inc., 527 F.2d 280 (3d Cir. 1975).

**DISCUSSION**

On appeal, Northeastern presents a two-pronged argument. First, it argues that the

bankruptcy court's order awarding attorneys' fees to Debtors' counsel is invalid because Northeastern never actually received service of the Turnover Motion, and that Debtors are unable to create the rebuttable presumption that Northeastern was actually served. As to this prong, Northeastern challenges the bankruptcy court's findings of fact, and, as such, the Court must review this ruling for "clear error." Secondly, Northeastern argues that even if Northeastern actually received the Turnover Motion, service was invalid because it was procedurally defective under Bankruptcy Rule 7004(b)(3). The Court's review on this issue is plenary.

    A.    *The Mailbox Rule Presumption*

The bankruptcy court found that on January 12, 2005, Debtors' counsel served Northeastern with the Turnover Motion, and notice of the motion, response deadline and hearing date by first class mail addressed to:

> Attention: Val
> NORTHEASTERN TITLE LOANS
> 1560 NORTH DUPONT HIGHWAY
> NEW CASTLE, DE 19720

In re Butts, 350 B.R. 12, 17 ¶ 15 (Bankr. E.D. Pa. 2006). Debtors' counsel filed a certificate of service with the bankruptcy court on January 12, 2005 – along with the filing of the Turnover Motion and the documents related to the response date and hearing– verifying that he served Northeastern at the New Castle address, via first class mail, postage prepaid. The court further found that Northeastern received mail delivery of the Turnover Motion and related documents at its New Castle office. Id. at 18 ¶ 21. The bankruptcy court made this finding notwithstanding Northeastern's contention that it never received the Turnover Motion. The court based this finding on Northeastern's admission that the New Castle office generally receives mail that is

5

properly addressed to it, the court's assessment of the credibility of Northeastern's witnesses, and the "rebuttable presumption in the law that properly addressed mail is received by the addressee." Id. at 18 n.6.

It is well established that "proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. United States, 285 U.S. 427, 430 (1932); see also In re Bodnar, No. 98-MC-95, 1998 U.S. Dist. LEXIS 12597, at *20 (E.D. Pa. Aug. 13, 1998) ("If mail is properly addressed, stamped and deposited in the postal system, a rebuttable presumption arises that the notice was received by the addressee."). The mailbox rule presumption is not nullified solely by testimony denying the receipt of the item mailed. Freeman v. City of Philadelphia, No. 90-2356, 1994 U.S. Dist. LEXIS 9858, at *4 (E.D. Pa. July 21, 1994).

To be sure, there was no extrinsic "proof" before the bankruptcy court that Debtors' counsel actually properly addressed, stamped and deposited the Turnover Motion documents in a post office box.[4] The bankruptcy court considered the testimony of Mr. Horvitz, Debtors' counsel, who stated that he mailed the Turnover Motion to Northeastern's New Castle office at the proper address, and whose certificate of service was filed with the motion and, not surprisingly, supported such testimony. The bankruptcy court then weighed Mr. Horvitz's

---

[4] Debtors' counsel did not use certified or registered mail, so there is no record or receipt from a U.S. Post Office verifying that, much less when, the Turnover Motion was mailed. Debtors' counsel stated that the Turnover Motion documents were not returned to him by the U.S. Post Office, so he assumed that Northeastern received them. Because Northwestern denies receiving the motion, it is obviously impossible to examine the documents to verify whether they were postmarked and properly addressed.

testimony against the testimony of Northeastern's witnesses, which it found to be "incredible" and "unbelievable."[5]

A certificate of service, filed by an attorney, which attests to proper, timely service of a party, may establish the common law mail box presumption. That this certificate of service was filed along with the original motion on January 12, 2005, attesting to serving Northeastern with the motion papers on the same day, before Northeastern presented its challenge that service was improper, does contribute to its believability. The only evidence Northeastern presented to rebut this presumption was testimony from its witnesses denying receipt of the Turnover Motion documents. The bankruptcy court was then in a position to evaluate the testimony from witnesses for both parties. It found Mr. Horvitz's testimony to be credible, and found Northeastern's witnesses' testimony to be unbelievable.[6] The bankruptcy court's finding that Mr.

---

[5] In particular, the bankruptcy court did not credit the testimony of either John or Valerie Henry that they did not see any of the faxed letters that Mr. Horvitz sent to Northeastern's New Castle office on February 25, February 28, and March 7, 2005. In re Butts, 350 B.R. at 19 n.8. He found this testimony to be "incredible" and "unbelievable." Id. Further, the bankruptcy court stated that "[t]he unbelievable testimony of these witnesses regarding the faxes of February 25, 2005, February 28, 2005 and March 7, 2005 causes me to mistrust the accuracy of the balance of their testimony, including their testimony that the Delaware office never received the Turnover Motion Documents, which were sent by first class mail." Id.

[6] The bankruptcy court noted that if John Henry and/or Valerie Henry had followed Northeastern's internal policy, then the legal documents or documents relating to the Debtors' bankruptcy would have been forwarded to its corporate offices in Atlanta, Georgia. In re Butts, 350 B.R. at 19 n.8. A review of those corporate and/or legal files may have revealed whether Northeastern's corporate office received such documents. Mr. Newell flew from Atlanta to Philadelphia to attend the hearing on Northeastern's set aside motion as Northeastern's corporate representative, yet the court noted that Mr. Newell did not review Northeastern's legal file relating to the Debtors before appearing in court and did not bring the file with him to court. The court stated that "[f]rom [Northeastern's] apparent failure to undertake this most simple investigation, I draw the inference that a review of the file in Atlanta would have revealed evidence contrary to [Northeastern's] position." Id.

Horvitz mailed, and Northeastern received, the Turnover Motion and related documents, in light of the evidence before the court, was not clearly erroneous and will be affirmed.

B.   *Service Under Bankruptcy Rule 7004*

Bankruptcy Rule 7004(b)(3) provides that, in addition to the methods for service specified in Federal Rule of Civil Procedure Rule 4(e)-(j), service upon a corporation in the United States may be made by first class mail postage prepaid, "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Bankr. P. 7004(b)(3).[7]

Northeastern argues that mailing the Turnover Motion to its store in New Castle, Delaware to the attention of "Val" – namely, Valerie Henry, the Northeastern office manager at that location – was invalid service because neither Ms. Henry nor any other Northeastern employee at that location is an "officer, a managing or general agent" under the statute, or is otherwise authorized to receive service of process.[8] In other words, Northeastern claims that the only valid ways to serve Northeastern are through service on CT Corporation, its registered agent in Delaware,[9] or through service on an appropriate corporate officer at Northeastern's corporate

---

[7] Service under Rule 7004(b)(3) is analyzed in the same way as service under Rule 4 of the Federal Rules of Civil Procedure.

[8] Northeastern claims that even though Ms. Henry serves as the office manager of the New Castle store, is in charge of the store's day-to-day operations, June 7, 2006 Hearing Tr. 27:2-4, and supervises ten sales representatives at that location, id. 27:9-12, she is not a corporate "officer," is not familiar with Northeastern's polices for handling legal matters, and is not authorized by Northeastern to receive service of process.

[9] While Northeastern has a total of 18 stores in four states, CT Corporation is its registered agent for service of process in Delaware.

8

headquarters in Georgia.[10] Northeastern argues that because Mr. Horvitz neglected to employ either of these methods, service was invalid. Instead, the bankruptcy court found that Ms. Henry was a "managing or general agent" of Northeastern for purposes of satisfying Rule 7004(b)(3), and, therefore, that service was valid.

The bankruptcy court acknowledged that some courts have held that the service of process rules should be interpreted literally and be strictly enforced, while other courts have viewed such rules as flexible, to be liberally construed as long as the party actually received notice of the action. See Schwab v. Assocs. Commercial Corp. (In re C.V.H. Transport, Inc.), 254 B.R. 331, 332 (Bankr. M.D. Pa. 2000) (noting that there has been some disagreement among the courts as to whether a specific "officer" or "agent" must be named in order to effectuate valid service); compare In re Schoon, 153 B.R. 48, 49 (Bankr. D. Cal. 1993) (requiring "literal compliance" with Rule 7004(b)(3) and stating that it should be "strictly construed")[11] with Wilen I.Y.M. L.C. v. Colter & Peterson, Inc., 98-Civ.-2633 (WGB), 1998 U.S. Dist. LEXIS 20927, at

---

[10] Northeastern argues that because all of its corporate "officers" reside in the Georgia office, service on any of its New Castle, Delaware employees is improper. However, its own corporate policies seem to belie this argument. The bankruptcy court found, based on testimony from Northeastern's employees, that if they receive documents relating to bankruptcies, corporate policy dictates that the New Castle office retrieves the loan file and forwards it to Northeastern's main office in Georgia. In re Butts, 350 B.R. at 18 ¶ 19. Further, upon receipt of legal documents, the New Castle office manager will telephone in house counsel in Georgia and fax or mail the documents received. Id. at 18 ¶ 20. Northeastern clearly contemplates that its New Castle, Delaware office may receive documents relating to bankruptcies, and/or other legal documents, and it has policies in place to ensure that such documents reach the right people.

[11] In In re Schoon, the court found that service on a corporation was insufficient because the envelope, although sent to the corporation's correct address, was addressed to "Attn: President." 153 B.R. at 49. The court deemed this notice insufficient because the debtors had not served an "officer," but had merely served an "office." Id. The court noted that the debtors could have exercised slightly more diligence and determined the name of the president, or another appropriate officer, and addressed the envelope to his or her by name. Id.

9

*4 (D.N.J. Sept. 24, 1998) (noting that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint") (quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs. Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted)); see also In re Golden Books Family Entm't, 269 B.R. 300, 305-06 (Bankr. D. Del. 2001) (finding that the notice documents were deficient because, among other things, they failed to address any of the copies of the notice to a person of authority or to a person authorized to accept service, but noting that this deficiency could have been cured by addressing the notice to an officer or to the known person responsible for the matters at hand).[12]

As the Supreme Court as noted, "a fundamental requirement of due process of law in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Court of Appeals has analyzed the question of whether a person is a "managing or general agent" as follows:

> The determination whether an individual is "a managing or general agent" depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are "sufficiently necessary" to the corporation's operations. He should be "a responsible party in charge of any substantial phase" of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. Authority to act as

---

[12] In In re Golden Books Family Entm't, the court indicated that service would have been proper had debtors served the person responsible for the contracts at issue, which information was either known "or at least easily identifiable" to the debtors because the appropriate person was the signatory on each of the signed contracts. 269 B.R. at 305. The court noted that it would not be "too onerous" to require that notice be addressed to the known person responsible for the contracts, "in order for the notice to be considered 'reasonably calculated'" to afford the non-moving party an opportunity to object. Id.

> agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule.

Gottlieb v. Sandia Am. Corp., 452 F.2d 510, 513 (3d Cir. 1971) (internal citations omitted). The cases that support a strict interpretation of Rule 7004, which Northeastern rely upon here, involved instances in which a party attempted to serve a corporate defendant without directing service to a particular officer, or served an "office," i.e., "the President," without naming the "officer" who fulfilled that role. Instead, courts within the Third Circuit and other circuits have embraced the logic underlying the Supreme Court's "reasonably calculated" approach, and have found that service upon a non-executive employee, including a secretary or receptionist, is generally sufficient if adequate notice is provided. See, e.g., Wilen I.Y.M. L.C., 1998 U.S. Dist. LEXIS 20927, at *4 (holding that service of summons and complaint on secretary was proper even though she had no executive or management responsibilities); Direct Mail Specialists, 840 F.2d at 689 (holding that service on a receptionist in the office shared by the defendant was sufficient to create personal jurisdiction over the defendant under Rule 4(d)(3)); Union Asbestos & Rubber Co. v. Evans Prods. Co., 328 F.2d 949, 952-53 (7th Cir. 1964) (finding that service of process on a sales manager's secretary at defendant's office was sufficient in light of the facts that the sales manager was out of the office 75 to 80 per cent of the time, and notice of the summons was communicated immediately, at the sales manager's direction, to defendant at its home office).

In the present case, Debtors' counsel served the particular employee at Northeastern whose name he knew. Ms. Henry testified that there were no other "Vals" employed by the New Castle store, June 7, 2006 Hearing Tr. 31:18-19, and that she would generally receive all

11

correspondence addressed to "Val," id. 40:3-5. During oral argument before the Court, Mr. Horvitz stated that he had spoken to "Val" on the telephone on January 3, 2005. According to Mr. Horvitz, at that time she refused to provide her full name. May 29, 2007 Oral Argument Tr. 20:19-22. At the hearing before the bankruptcy court, Ms. Henry admitted to having had a telephone conversation with Mr. Horvitz but apparently claimed she did not recall the details of the call. June 7, 2006 Hearing Tr. 27:19–28:23. Mr. Horvitz placed that January 3, 2005 telephone call in connection with the bankruptcy petition he had filed with the bankruptcy court and faxed to Northeastern's New Castle office on that date. Northeastern's response to the January 3, 2005 bankruptcy filing was prompt, and is uncontested, namely, on January 3, 2005, Northeastern sent Mr. Horvitz a copy of the loan agreement between it and the Debtors, and it authorized Alliance to release the Debtors' vehicle to them.

When Alliance had not relinquished Debtors' vehicle by January 12, 2005, Mr. Horvitz took further legal action. Mr. Horvitz referred to the "Notice of Repossession" that Northeastern had previously sent to the Debtors only a few weeks earlier, which stated that all correspondence should be addressed to Northeastern through its New Castle, Delaware office, and provided the address. Mr. Horvitz also referred to his past interaction with a Northeastern employee – his telephone conversation with "Val." Accordingly, he mailed the Turnover Motion to Northeastern's New Castle address, and addressed the papers, "Attention: Val." Although Mr. Horvitz did not know it at the time, Ms. Henry actually was the store manager at the New Castle office, responsible for all ten of its on-site employees.

As an office manager, Ms. Henry received mail at Northeastern's New Castle, Delaware location and, if necessary, forwarded it to the appropriate individual at Northeastern's corporate

12

offices. At the hearing before the bankruptcy court, Ms. Henry testified that bankruptcies are "above" her. June 7, 2006 Hearing Tr. 32:12. However, while Ms. Henry's responsibilities may not require her to know the intricacies of bankruptcy law and procedure, in response to further questioning from the bankruptcy court she testified that she frequently works on loan files that result in repossession of vehicles, like the Debtors' case. Id. 41:20-24. She testified that if she received correspondence from an attorney stating that a bankruptcy was filed, she would immediately pull the file, mail a copy of the file to the appropriate personnel in Northeastern's Georgia office, retain the file in a bin marked "Bankruptcy," and send a fax to the repossession agent authorizing it to release the vehicle. Id. 41:25-43:3. Therefore, it would seem that in carrying out these responsibilities, Ms. Henry encounters bankruptcy proceedings regularly or frequently enough to know how to perform her particular duties, and to forward them to the appropriate person within the corporation.

In viewing the particular facts of this case, which involve a loan agreement between Northeastern, entered into by employees of its New Castle, Delaware location, and a customer of the New Castle, Delaware office, it is reasonable that the Debtors would serve papers on Northeastern's New Castle, Delaware office. It was reasonable for Debtors' counsel to address the problems at hand – his clients' default on a loan agreement processed by the New Castle location, and the New Castle location's subsequent authorization to release his clients' automobile – by serving the party with which his clients had dealt and at the location noted on the relevant papers. Service on the office manager of that location, with whom Debtors' counsel was familiar, was also reasonable. While Northeastern may not have specifically authorized Ms. Henry to receive service of process, Ms. Henry's position as office manager certainly entails

13

enough managerial responsibility, such that she could be considered a "managing or general agent" of Northeastern. In light of these facts, the Court finds that Debtors' counsel's service of the Turnover Motion on Northeastern, by sending the documents via postage prepaid, first class mail, to the attention of "Val," using the correct address of Northeastern's New Castle, Delaware office was valid because it was "notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. Accordingly, the bankruptcy court's order will be affirmed.[13]

CONCLUSION

For the reasons stated above, the bankruptcy court's September 12, 2006 Order and the accompanying September 18, 2006 Opinion will be affirmed.

/s/ Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

June 13, 2007

---

[13] In affirming the bankruptcy court's order, this Court acknowledges the cogent arguments and well-calibrated effort advanced by counsel for Northeastern, particularly at the oral argument.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF | CIVIL ACTION 06-4594 |
| | BANK. NO. 05-10104 |
| TONY E. BUTTS AND | |
| STACEY BUTTS | |

ORDER

**AND NOW**, this 13th day of June 2007, upon consideration of the Bankruptcy Court's Order dated September 12, 2006, Appellant's Brief (Docket No. 3), and Appellee's Response thereto (Docket No. 4), **IT IS HEREBY ORDERED** that the Order of the Bankruptcy Court dated September 12, 2006 is **AFFIRMED**.

BY THE COURT:

/s/ Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge